## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES D. ROSARIO
329 Regency Circle
Dublin, GA 31021,

ROBERT J. RADITZ,
22 Oxford Circle
Southampton Township, NJ 08088

MARIA L. GARCIA-REYES,
Villa de la Playa
4 Calle Boqueron
Vega Baja, Puerto Rico 00693,

individually and on behalf of all others similarly situated,

        Plaintiffs,

    v.

LLOYD J. AUSTIN III, in his official capacity as
Secretary of Defense,
1000 Defense Pentagon
Washington, D.C. 20301-1000

CHRISTINE WORMUTH, in her official capacity as
United States Secretary of the Army,
101 Army Pentagon
Washington, D.C. 20310-0101

THOMAS W. HARKER, in his official capacity as
Acting United States Secretary of the Navy,
1000 Navy Pentagon
Washington, D.C. 20350-1000,

JOHN P. ROTH, in his official capacity as
Acting United States Secretary of the Air Force,
1690 Air Force Pentagon
Washington, D.C. 20330-1670, and

PHYSICAL DISABILITY BOARD OF REVIEW
3351 Celmers Lane
Joint Base Andrews, MD 20762

        Defendants.

Case No.: 1:21-cv-1928


CLASS ACTION

## COMPLAINT

Plaintiffs James D. Rosario, Robert J. Raditz, and Maria L. Garcia-Reyes (collectively, "Plaintiffs"), all military veterans who served in the post-9/11 era, respectfully bring this class action against the United States Secretaries of Defense, the Army, the Navy, and the Air Force, in their official capacities, (collectively, "Service Branches"), along with the Physical Disability Board of Review ("PDBR," and collectively with Service Branches, "Defendants"), on behalf of themselves and a class consisting of all U.S. military veterans who, like them, applied to the PDBR post-discharge to have their Department of Defense combined disability percentage re-evaluated; and as a result of their PDBR application, were retroactively and constructively removed by Defendants from the Temporary Disability Retired List ("TDRL") after six months with a less than 30 percent rating for their unfitting mental health condition incurred as a result of a highly stressful event, without any of the protections guaranteed under 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1202, 1210 and 1214. Plaintiffs were retroactively and constructively placed on the TDRL by Defendants with a disability rating of at least 50 percent under 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1202, 1210 and 1214 for six months from their discharge date; and were then retroactively and constructively removed from the TDRL by Defendants, without any of the protections provided under 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1202, 1210 and 1214, with a permanent combined disability rating of less than 30 percent, making them ineligible for a medical retirement and the substantial benefits, such as healthcare, that it confers. All individuals who experienced a similar fact pattern constitute the proposed Class. Plaintiffs and the proposed Class seek relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, from the Defendants' decision to arbitrarily, capriciously, and unlawfully deny the Class members the permanent disability rating required for a medical retirement, and allege as follows:

2

## INTRODUCTION

1.      Plaintiffs and members of the Class they seek to represent are disabled veterans who were arbitrarily, capriciously and in violation of 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1202, 1210, and 1214 separated from the military without a medical retirement when their respective Service Branches adopted the PDBR's recommendation to retroactively and constructively remove them from the TDRL after six months with a less than 30 percent rating for a mental-health condition that resulted from a highly stressful event in service.

2.      Pursuant to 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1210(a), 1210(b) and 1214, the PDBR recommended Plaintiffs and Class Members be retroactively and constructively placed on the TDRL for their unfitting mental health condition with a 50 percent rating.  After six months, however, the PDBR retroactively and constructively removed Plaintiffs and Class Members from the TDRL with a permanent combined rating of less than 30 percent for their unfitting mental health-related condition and any other unfitting conditions.

3.      The PDBR failed to properly evaluate Plaintiffs' and Class Members' eligibility for medical retirement status and improperly recommended Plaintiffs and Class Members be denied the corresponding benefits.  Defendants arbitrarily, capriciously, and in violation of law, accepted and adopted the PDBR's recommendation to medically separate, rather than retire, Plaintiffs and Class Members.

4.      In adopting the PDBR's recommendation, Defendants failed to implement the protections provided by 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1210(a), 1210(b), and 1214, which are designed to protect veterans such as Plaintiffs and Class Members.  *See also*, *U.S. Dep't of Def., Policy Memorandum on Implementing Disability-Related Provisions of the National Defense Authorization Act (NDAA) of 2008* (Pub L. 110-181) (2008).  These laws and regulations required Defendants to place any service member who suffers from an unfitting mental health condition

3

that developed as a result of a highly stressful event on the TDRL with an initial disability rating of at least 50 percent for at least six months from the service member's separation date, to evaluate the service member's condition at regular intervals, and to then make a decision on the permanency of the condition within five years of separation. Defendants could only make a permanent rating decision after the respective branch had conducted an appropriate post-discharge medical examination. Moreover, when Defendants issued a proposed permanent rating, the laws and regulations cited above required that the service member being removed from the TDRL first be provided with an opportunity for a full and fair hearing to contest removal or seek a higher permanent rating.

5.     Plaintiffs and Class Members never received the required post-discharge medical examinations. In addition, Defendants, never afforded Plaintiffs or Class Members an opportunity for a full and fair hearing before removing them from the TDRL and reducing their disability rating for their mental health condition to less than 30 percent, or at times, zero. Therefore, Defendants decision to retroactively and constructively remove Plaintiffs and Class Members from the TDRL six months after their discharge and to assign each a permanent disability rating of less than 30 percent was arbitrary, capricious, and contrary to law.

6.     At the present date, the time period for conducting the required medical examinations and hearings has expired. Plaintiffs and Class Members, therefore, are entitled to retroactive and constructive placement on the TDRL for the statutory maximum period of five years from their dates of separation, and then an award of a permanent retirement with at least a 50 percent rating for their unfitting mental health disability.

7.     Service Branches' decision to assign Plaintiffs and Class Members a disability rating of less than 30 percent for their unfitting mental health disability placed them beneath the

4

30 percent combined disability threshold required for military medical retirement.  Therefore, Plaintiffs and Class Members erroneously remain in a separated status, instead of the medical retirement status to which they are entitled.  This error deprives Plaintiffs and Class Members of substantial benefits, which Plaintiffs and the Class earned through their honorable service and which would be available to them if they held retiree status.  For example, a medical retiree is entitled to military health care (TRICARE) for themselves, their spouse, and their minor children.[1] A medical retiree is also entitled to access to military bases, commissary privileges, and the right to wear his or her uniform on appropriate public occasions, travel on military aircraft, and receive military funeral arrangements and burial privileges in national cemeteries.[2]

8.    This lawsuit is brought under the APA to challenge each Defendant's practice that led directly to the unlawful medical separation of the Plaintiffs and the members of the class – the arbitrary, capricious, and unlawful retroactive and constructive removal of service members from the TDRL after six months without the protections afforded by 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1210(a), 1210(b), and 1214.

9.    Plaintiffs and Class Members have elected to pursue their claims as a class action because Defendants continue to fail to apply the law as required.

## PARTIES

10.    Plaintiff Maria L. Garcia-Reyes is a citizen of the United States, a veteran of the Army, and a resident of Vega Baja, Puerto Rico.

11.    Plaintiff James D. Rosario is a citizen of the United States, a veteran of the Army

---

[1] *See* Medical Retirement, TRICARE, (Last Updated July 4, 2020) https://tricare.mil/LifeEvents/Retiring/MedicalRetirement

[2] *See* https://www.militaryonesource.mil/military-life-cycle/separation-transition/military-separation-retirement/military-retirement-do-you-have-this-covered/.

and a resident of Dublin, Georgia.

12. Plaintiff Robert J. Raditz is a citizen of the United States, a veteran of the Marine Corps, and a resident of Southampton Township, New Jersey.

13. Defendant Lloyd J. Austin III is the United States Secretary of Defense. Defendant Austin III is the chief officer of the Department of Defense ("DoD") and exercises authority, direction, and control over the DoD and the PDBR, which makes recommendations regarding veterans' disability status. Defendant Austin III's official duties are conducted at 1000 Defense Pentagon Washington, D.C. 20301-1000. Defendant Austin III is sued in his official capacity.

14. Defendant Christine Wormuth is the United States Secretary of the Army. She is the chief officer of the Army and exercises authority, direction, and control over the Army. Defendant Wormuth's official duties are conducted at 101 Army Pentagon, Washington, D.C. 20310-0101. Defendant Wormuth is sued in her official capacity.

15. Defendant Thomas W. Harker is the acting United States Secretary of the Navy. He is the chief officer of the Navy and exercises authority, direction, and control over the Navy and Marine Corps. Defendant Harker's official duties are conducted at 1000 Navy Pentagon, Washington, D.C. 20350-1000. Defendant Harker is sued in his official capacity.

16. Defendant John P. Roth is the acting United States Secretary of the Air Force. He is the chief officer of the Air Force and exercises authority, direction, and control over the Air Force. Defendant Roth's official duties are conducted at 1690 Air Force Pentagon, Washington, D.C. 20330-1670. Defendant Roth is sued in his official capacity.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case raises federal questions under the laws governing the military and under the APA. 10 U.S.C. § 1210; 5 U.S.C. § 702 *et seq.*

18.     Plaintiffs seek declaratory and other equitable relief. *See* 5 U.S.C. §702. Specifically, Plaintiffs seek orders setting aside the erroneous determinations of their military disability retirement benefits by Defendants, and requiring Defendants to resolve Plaintiffs' and Class Members' cases in accordance with the law.

19.     The medical retirement status and benefit determinations by Service Branches constitute final agency actions for which there is no other adequate remedy. *See* 5 U.S.C. § 704.

20.     Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because several Defendants' principal offices are located in and their official duties are conducted within this judicial district. Venue is also proper under 5 U.S.C. § 703 because this is a Court of competent jurisdiction.

## LEGAL BACKGROUND

### Military Discharge Procedures

21.     Chapter 61 of Title 10 of the United States Code establishes the process through which all military departments may discharge disabled service members. It authorizes the discharge of military personnel who are found to be unfit for continued military service due to physical or mental health related disability.

22.     Fitness for duty is governed by regulations set forth by the various military departments. 10 U.S.C. § 1216.

23.     Service Branches utilize similar procedures under their respective regulations for determining unfitness on the basis of disability. All branches' procedures consist primarily of three phases: evaluation by a Medical Examination Board ("MEB" or "Medical Board"), referral to a Physical Evaluation Board ("PEB"), and discharge. Department of Defense Instruction ("DoDI") 1332.38; Army Regulation 635-40 "Physical Evaluation for Retention, Retirement, or Separation" (Feb. 8, 2006) (hereinafter "Army Regulation 635-40"); Secretary of Navy Instruction

("SECNAVINST") 1850.4e; Air Force Instruction ("AFI") 36-3212 (July 15, 2019).

24.    The process begins with referral to an MEB.  Army Regulation 635-40 ¶ 4-9; SECNAVINST 1850.4e; AFI 36-3212. The MEB evaluates a service member's medical symptoms to determine whether the service member meets military retention standards.  Army Regulation 635-40 ¶ 4-10; SECNAVINST 1850.4e; AFI 36-3212.  If the MEB determines that the service member has one or more physical or mental conditions that fall below retention standards or duty limiting standards, the MEB will refer the service member to a PEB for an ultimate fitness determination.  DoDI 1332.38, E4.A1.1.2.11.4; Army Regulation 635-40 ¶¶ 4-10, 4-13(a); SECNAVINST 1850.4e; AFI 36-3212.

25.    If the medical conditions render a service member unable to reasonably perform the duties of the service member's office, grade, rank, or rating, the PEB will find that the service member is unfit for duty.  *See* 10 U.S.C. § 1201 and DoDI 1332.38, E3, P3.2.1.  The PEB must then assign a disability rating ranging from 0 to 100 percent, in increments of 10 percent, for each unfitting condition.  *Id.*

26.    The Veterans Affairs Schedule for Rating Disabilities ("VASRD") provides a standardized methodology for assigning a numeric disability rating.  *See* 10 U.S.C. § 1201, 1203, National Defense Authorization Act for Fiscal Year 2008, Pub.  L. No. 110-118 § 1642(a), 122 Stat 465, codified at 10 U.S.C. § 1216a and 38 C.F.R. Part IV *et seq*.  Each military department is required to use VASRD when rating unfitting conditions.  10 U.S.C. § 1216a.

27.    The disability rating dictates the extent of military benefits and services provided to the service member after discharge.  *Id.*  The difference in benefits is drastic.  When the combined rating for all disabling conditions is at least 30 percent, the service member is "medically retired," and receives monthly disability retirement pay and other benefits, such as lifetime

healthcare coverage and military commissary and exchange privileges.  *See* 10 U.S.C. §§ 1201 and 1203.  When the rating is below 30 percent, the service member is "medically separated" and receives a one-time lump sum severance payment and no additional benefits.  *See* 10 U.S.C. §§ 1201 and 1203.

28.    If a service member is medically retired with a rating of 30 percent or above, the PEB must decide whether the veteran's unfitting condition(s) are permanent and stable such that the veteran should be awarded a permanent retirement under 10 U.S.C. § 1201; or whether the veteran's unfitting condition(s) are unstable and likely to improve or worsen over the next five years such that the veteran should be placed on the TDRL pursuant to 10 U.S.C. § 1202.

29.    A service member placed on the TDRL receives additional procedural protections under 10 U.S.C. § 1210.  First, a service member on the TDRL must be given a physical examination at least once every eighteen months to determine whether there has been any change in his or her disability. 10 U.S.C. § 1210(a).  Second, a service member must be kept on the TDRL with a 50 percent rating until the PEB decides whether the disability is permanent and stable. 38 C.F.R. § 4.129 Third, once the PEB decides that a disability is permanent and stable, it must propose a final disability rating that will result in the service member's permanent retirement or medical separation. 10 U.S.C. §§ 1210(c)-(f).  Finally, a service member separated or permanently retired from the TDRL must be given the opportunity for a full and fair hearing where the service member can argue for an increased rating or demonstrate that his or her condition is in fact not stable or permanent. 10 U.S.C. § 1214.

30.    If the military department does not provide periodic examinations, convene a formal PEB, or issue a final determination regarding the permanency of a service member's disability within five years, the service member is entitled to have their condition considered

permanent for evaluation purposes.  10 U.S.C. §  1210(b).

### Congress Seeks to Harmonize Military and VA Mental Health Determinations

31.    In January 2008, Congress enacted the Dignified Treatment of Wounded Warriors Act of 2008, which authorized the DoD to establish the PDBR. 10 U.S.C. § 1554a(a)(1).  The PDBR is a joint service military review board that reviews the appeals of medically separated veterans who challenge their disability ratings and makes recommendations to military departments regarding those ratings.

32.    The PDBR was created to address concerns that military departments were not accurately and consistently assigning disability ratings through the PEB and MEB processes, especially in comparison with disability exams conducted by the U.S. Department of Veteran Affairs ("VA").  During a 2007 joint congressional hearing, the Chairman of the Veterans' Disability Benefits Commission testified that military departments frequently assigned lower disability ratings than the VA for the same service member and the same medical conditions, even while using the same disability rating criteria under the VASRD.  The Chairman further testified that it is "apparent that DOD has strong incentive to assign ratings less than 30 percent (the threshold for military retirement eligibility) so that only separation pay is required and continuing family health care is not provided."

### Statutory & Regulatory Background

33.    Following the enactment of the Dignified Treatment of Wounded Warriors Act, the DoD issued its Instruction 6040.44, which created the PDBR and its governing policies.  Pursuant to DoDI 6040.44, the PDBR may make the following recommendations to military departments: (1) to affirm the veteran's separation, (2) to re-characterize the veteran's separation, (3) to modify the disability rating, and/or (4) to propose a new disability rating be issued.  *Id.*  The military department can then issue a final decision, in which it modifies or accepts the recommendations

of the PDBR.  *Id.*  Generally, when the service branch accepts the PDBR's recommendation, the recommendation contains the only substantive discussion of the evidence and the law.

34.    When examining the evidence, the PDBR may only review the PEB's determinations based on the evidence the PEB had as well as any other evidence provided by the applicant, and the PDBR must apply the VASRD along with all applicable statutes in effect at the time of the contested separation.  DoDI 6040.44, Enclosure 3, § 3e.

35.    Since the PDBR is bound by the VASRD, it must apply 38 C.F.R. § 4.129 to all service members found unfit for continued service after September 11, 2001 due to mental health disability resulting from a highly stressful event in service.  *See also* Office of the Under Secretary of Defense for Personnel and Readiness, Memorandum for Secretary of the Army et al., "Requests for Correction of Military Records Relating to Disability Ratings for Post-Traumatic Stress Disorder" (July 17, 2009).  Where a grant of relief is appropriate, the PDBR must assign a disability rating of no less than 50 percent for the first six months following separation, and subsequent fitness determinations and disability ratings must be based on applicable evidence.  *Id.*

36.    Pursuant to the law and congressional intent, Plaintiffs and the Class are entitled to permanent medical retirement status and associated benefits, as the Service Branches' actions denying medical retirement status are arbitrary, capricious, and contrary to law.

## FACTUAL ALLEGATIONS

### Rosario

37.    Plaintiff Rosario served on active duty in the Army from June 15, 2006 to September 15, 2008.  He was a Track Vehicle Mechanic and attained the rank of Specialist.

38.    Plaintiff Rosario was deployed to Iraq from March 2007 to June 2007, where he performed guard duty and manned checkpoints.  Plaintiff Rosario received numerous awards and medals, including the Iraq Campaign Medal, the National Defense Service Medal, the Global War

on Terrorism Service Medal, and the Army Service Ribbon.

39.    Plaintiff Rosario's symptoms began in May 2007, when he started experiencing chest pain, palpitations, shortness of breath, and instances of passing out that caused him to be medically evaluated by the 28th Combat Support Hospital in Iraq.

40.    Six months later, Plaintiff Rosario was still experiencing severe symptoms, including panic attacks, insomnia, depression, intrusive thoughts, social isolation, anhedonia, apathy, irritability, and impaired relationships with family.  In November 2007, Plaintiff Rosario was evaluated by a psychologist, who diagnosed him with chronic post-traumatic stress disorder ("PTSD") starting as early as August 2007.

41.    An MEB evaluated Plaintiff Rosario on March 27, 2008, finding that he had chronic PTSD, based on symptoms of panic attacks, insomnia, irritability, intrusive recollections of deployment experiences, emotional numbness, social avoidance, impaired relationships, disturbing memories of military experiences, distressing dreams, avoidance of reminders, physical anxiety reactions, decreased interest in activities, emotional isolation, diminished hope for the future, and hypervigilance.  As a result, the MEB found that his chronic PTSD was medically unacceptable for retention.

42.    On June 10, 2008, a PEB determined that Plaintiff Rosario was unfit for service and recommended that he be assigned a combined disability rating of 20 percent for both his anxiety disorder and for right hip degenerative joint disease, with each condition rated at 10 percent.

43.    On May 22, 2008, six months before Plaintiff Rosario's discharge from the Army, the VA diagnosed him with PTSD and an anxiety disorder during a Compensation and Pension exam.  The VA examiner described Plaintiff Rosario's score on the Mississippi Scale for Combat-

Related Posttraumatic Stress Disorder as "excessively high."  As a result, the VA issued a decision on October 23, 2008, with a disability rating of 50 percent for Plaintiff Rosario's PTSD and anxiety disorder.  It found that his disabilities were service-incurred and applied benefits retroactively to September 16, 2008.

44.    About twenty-four months after Plaintiff Rosario's separation from the Army, the VA, in a decision dated January 20, 2011, continued Rosario's disability rating for PTSD and anxiety disorder of 50 percent and his disability rating for degenerative arthritis of right hip joints at 10 percent, for a continued combined rating of 60 percent. He continued to suffer PTSD symptoms, including memory problems or lapses, irritability, sleep problems, hypervigilance, impaired relationships, panic attacks, and nightmares.

45.    On June 6, 2014, Rosario submitted an application to the PDBR seeking review of the Army's decision not to place him on the Permanent Disability Retirement List with a permanent rating of at least 50 percent for his mental health condition.

46.    On July 17, 2015, the PDBR recommended that Plaintiff Rosario's prior separation be modified to reflect that he was placed on the TDRL at 50 percent for six months, followed by a permanent separation with severance pay at a final 20 percent rating by reason of a physical disability.  He received a 10 percent permanent rating for an unspecified anxiety disorder and a 10 percent rating for Right Hip Degenerative Joint Disease.

47.    On August 24, 2015, the Department of the Army accepted the PDBR's decision.

**Raditz**

48.    Plaintiff Raditz served on active duty in the Marine Corps from January 19, 2005 to October 30, 2008 as an Assaultman.

49.    Plaintiff Raditz was deployed to Iraq in support of Operation Iraqi Freedom from

March 15, 2006 through October 13, 2006.  Upon discharge, Raditz received numerous awards and medals, including the Marine Corps Good Conduct Medal, the Sea Service Deployment Ribbon, the Iraq Campaign Medal with 1 Bronze Star, the Global War On Terrorism Service Medal, the National Defense Service Medal, a Letter of Appreciation, and the Rifle Marksman Badge.

50.    Plaintiff Raditz was injured in the line of duty following a military vehicle accident in Iraq on October 13, 2006.  A neuropsychological evaluation dated March 12, 2007, conducted by clinical neurologist Richard Berg, found he had "mild difficulties in cognitive functioning" in the areas of "verbal functions (naming)," "processing," and memory," as well as presenting with symptoms of PTSD.

51.    Even after receiving treatment, Plaintiff Raditz continued to experience cognitive impairments and headaches.  He was placed on limited duty from June 18, 2007 through December 18, 2007, later extended through October 2008.

52.    On April 4, 2008, Plaintiff Raditz was evaluated by a MEB, which found that his traumatic brain injury, headaches, insomnia, and mood disorder (PTSD) were "so debilitating [that] they make it difficult for the service member to remain on active duty."  It further stated that Plaintiff Raditz's PTSD precluded him from continuing active duty service.

53.    On July 14, 2008, a PEB determined that Plaintiff Raditz was unfit for further service and assigned him a combined 20 percent disability rating for right lateral compression syndrome of the patella, and his chronic PTSD at 10 percent for each.

54.    On November 6, 2008, the VA released a rating decision granting Plaintiff Raditz a service connection for PTSD at 50 percent, effective on October 31, 2008, following a September 19, 2007 diagnosis.  Plaintiff Raditz received his diagnosis of PTSD after being referred to by the

mental health department of his local military treatment facility.  The VA assigned 50 percent because Plaintiff Raditz had been released from military service in part due to his PTSD.

55.     On November 13, 2018, Raditz submitted an application to the PDBR seeking review of the Navy's decision to award only a 10 percent disability rating for his PTSD.

56.     On June 11, 2020, the PDBR recommended that Plaintiff Raditz's prior separation be modified to reflect that upon separation, he was placed on the TDRL with a rating of 60 percent (50 percent for PTSD and 10 percent for right lateral compression syndrome of the patella) for a period of six months.  The PDBR did not re-characterize the permanent 10 percent disability rating that Plaintiff Raditz was previously assigned for his PTSD.  Following his removal from the TDRL, Plaintiff Raditz remained medically separated with a combined rating of 20 percent (10 percent for PTSD and 10 percent for right lateral compression syndrome of the patella).

57.     On October 7, 2020, the Department of the Navy accepted the PDBR's decision.

### Garcia-Reyes

58.     Plaintiff Garcia-Reyes served for many years in the Army Reserve and National Guard.  Plaintiff Garcia-Reyes also served in the active duty Army from November 7, 2004 to January 25, 2008.  She served as a Surgical Nurse and attained the rank of Major.

59.     Plaintiff Garcia-Reyes was deployed to Kuwait and Iraq from November 2005 to October 2006.  Upon her discharge, she was awarded numerous awards and medals, including the National Defense Service Medal with Bronze Star, the Army Commendation Medal (second award), and the Army Reserve Components Achievement Medal (second award).

60.     Plaintiff Garcia-Reyes' deployment exposed her to numerous, severely injured patients for whom she was unable to assist beyond providing comfort.  She also experienced the inherent dangers that come from being in a combat zone, particularly when the hospital where she

worked was struck by mortar fire during her deployment.

61.     Plaintiff Garcia-Reyes began to show significant symptoms of anxiety following her combat zone deployment to Iraq in 2006, when she was stationed at the Brooke Army Medical Center in San Antonio, Texas.  These symptoms included serious panic attacks, which were at times coupled with dissociative episodes.  In July 2007, she experienced such a severe dissociative episode with panic features that she was hospitalized for her own safety.  Plaintiff Garcia-Reyes also suffered from daily symptoms of depression, including anhedonia, feeling down, depressed and hopeless, difficulty sleeping, feelings of tiredness and reduced energy, overeating, feeling bad about herself, feeling as if she was a failure, and trouble concentrating on important details.

62.     Plaintiff Garcia-Reyes underwent a mental status examination that scored her a 34 out of 36 on the prime MD depression screening scale.  She was diagnosed with chronic, severe PTSD and depressive disorder, and the examiner recommended that she be referred to the PEB for further evaluation.

63.     An MEB found that Plaintiff Garcia-Reyes fell below medical retention standards due to her chronic PTSD and depressive disorder.

64.     On November 30, 2007, a PEB determined that she was unfit for military service due to "depressive disorder with mixed symptoms of PTSD."  Plaintiff Garcia-Reyes was granted a disability rating of 10 percent for her symptoms "controlled on continuous medication."

65.     On August 12, 2008, the VA issued a ratings decision for Plaintiff Garcia-Reyes in response to her Application for Compensation and/or Pension ("Application for Compensation"), granting her service connection for PTSD with depression and assigning her a 50 percent disability rating effective January 26, 2008.  In reaching its findings, the VA relied upon Plaintiff Garcia-Reyes' service medical records and a July 2008 VA Initial PTSD examination.  The VA reported

that Plaintiff Garcia-Reyes suffered from recurrent and severe to moderate PTSD symptoms that include difficulty falling or staying asleep, irritability or outbursts of anger, hypervigilance, detachment from others, trouble concentrating on tasks, a sense of lack of control, low mood and a constrained affect.

66.    On October 10, 2014, Garcia-Reyes submitted an application to the PDBR seeking review of the Army's decision to award only a 10 percent disability rating for her PTSD.

67.    The PDBR recommended that Plaintiff Garcia-Reyes receive a constructive six month TDRL placement at 50 percent under 38 C.F.R. § 4.129, followed by a 10 percent permanent rating.

68.    On September 26, 2016, the Department of the Army accepted the PDBR's decision.

## THE PDBR DECISIONS

**How the PDBR *Should Have* Recommended That The Service Branches Determine Plaintiffs' Disability Retirement and Separation Benefits**

69.    For all Plaintiffs, Defendants correctly constructively placed Plaintiffs on the TDRL with 50 percent disability ratings for their respective mental health conditions, pursuant to 38 C.F.R. § 4.129, effective as of the date of their separations.  However, as explained above, Defendants' placement of Plaintiffs on the TDRL triggered certain statutory and regulatory procedural requirements.  These requirements included arranging one or more follow up physical examinations[3] and affording each Plaintiff the opportunity for a full and fair hearing at a formal

---

[3] 38 C.F.R. § 4.129 requires that the Department of Defense "schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted" and 10 U.S.C. § 1210(a) (1989) (amended 2017) requires "[a] physical examination be given at least once every 18 months … to determine whether there has been a change in the disability for which he was temporarily retired."

PEB (with all of its associated procedural protections) to determine whether the disability for which the veteran was temporarily retired was permanent and, if so, at what rating percentage. *See* DoDI 1332.38; Army Regulation 635-40 ¶ 7-4 (2006) ("A Soldier on the TDRL must undergo a periodic medical examination *and PEB evaluation* at least once every 18 months to decide whether a change has occurred in the disability for which the Soldier was temporarily retired.") (emphasis added); *see also* Army Regulation 635-40 ¶ 7-20(e)(1), (3) (providing that if the PEB recommends removing the service member from the TDRL, the service member is entitled to counseling from a PEB liaison officer and may also decide to waive or request a formal hearing); *see also* SECNAVINST 1850.4e (stating that initial follow-up medical examination should occur within 18 months of effective placement on the TDRL); *see also* AFI 36-3212(stating periodic examinations are required once every 18 months until final disposition or the five-year statutory period, whichever is earlier).

70.    Defendants never provided Plaintiffs the requisite post-discharge medical examinations during the TDRL period in order to determine when removal from the TDRL was appropriate or what permanent disability ratings were justified.  Moreover, because the Plaintiffs' constructive and retroactive removals from the TDRL occurred more than five years after Plaintiffs' separations, the follow-up examinations and the opportunity for a formal PEB, as required by 38 C.F.R. § 4.129, could no longer be conducted timely.

71.    Accordingly, Defendants could not retroactively and constructively remove Plaintiffs from the TDRL after only six months.  Defendants' decisions to do so were arbitrary, capricious, and contrary to law.  Defendants should have instead recommended that Plaintiffs be constructively retained on the TDRL with a 50 percent disability rating for their mental health condition for the maximum period of five years as required by 10 U.S.C. § 1210(b) and provided

a permanent disability retirement with a 50 percent disability rating thereafter.[4]

72.     Furthermore, it was arbitrary, capricious and contrary to law for Service Branches to adopt the PDBR's erroneously recommended permanent disability ratings based on Plaintiffs' pre-discharge medical examinations.  In short, the PDBR panels lacked appropriate support for their recommendations.

73.     Because the maximum five-year constructive placement on the TDRL expired without a single properly executed follow-up examination, a superseding disability rating determination, or an opportunity for a properly conducted PEB, Defendants' only lawful option was to provide plaintiffs with a permanent retirement upon their constructive removals from the TDRL.  38 C.F.R. § 4.129 and 10 U.S.C. §§ 1210 and 1214.

74.     In sum, it was unlawful for Defendants to fail to take the following three steps: (1) retroactively and constructively place Plaintiffs on the TDRL for the maximum five years with a 50 percent disability rating, (2) retroactively and constructively remove Plaintiffs from the TDRL after five years, and (3) retroactively retire Plaintiffs with a permanent disability rating of at least 50 percent.

## CLASS ACTION ALLEGATIONS

75.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), and (b)(2) individually and on behalf of a Class consisting of veterans who were retroactively and constructively placed on but removed from the TDRL with a less than 30

---

[4] 10 U.S.C. § 1210 provides:

(b)     The Secretary concerned shall make a final determination of the case of each member whose name is on the temporary disability retired list upon the expiration of five years after the date when the member's name was placed on that list. If, at the time of that determination, the physical disability for which the member's name was carried on the temporary disability retired list still exists, it shall be considered to be of a permanent nature and stable.

percent rating for a mental health condition incurred as a result of a traumatic event without any of the protections provided under 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1202, 1210 and 1214.

76.     The Class Members are so numerous that joinder of all members is impractical. While the exact number and identify of Class Members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery from Defendants, Plaintiffs believe that there are at least hundreds of members in the proposed Class.  Class Members may be identified from records maintained by Service Branches.

77.     Plaintiffs' claims are typical of Class Members' claims, as they, like all Class Members, served in the military, suffered from a mental health related condition that resulted from a highly stressful event in service, were improperly evaluated by the PDBR after discharge, and denied proper retirement benefits from the military.

78.     Plaintiffs will fairly and adequately protect the interests of the Class Members, and Plaintiffs have obtained counsel experienced in litigating class actions and matters involving similar or the same questions of law.

79.     There are questions of law and fact common to all Class Members that predominate over any questions solely affecting individual Class Members.  Those common questions of law and fact include, but are not limited  to:

a.  Whether Defendants' decision to retroactively and constructively place Plaintiffs on the TDRL and subsequently remove them from the TDRL with a less than 30 percent permanent disability rating without the protections provided by 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1202, 1210 and 1214, was contrary to law;

b.  Whether the Defendants' decision to retroactively and constructively place Plaintiffs on the TDRL and then retroactively remove Plaintiffs from the TDRL

with a less than 30 percent permanent disability without the protections provided by 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1202, 1210 and 1214, was arbitrary and capricious; and

c.  To what extent Class Members are entitled to declaratory relief, reversal of final decisions, military medical retirement and disability separation benefits.

80.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would impose incompatible standards of conduct for Defendants.

81.  Defendants have acted or refused to act on grounds that apply generally to the Class Members so that final declaratory relief is appropriate as to the Class as a whole.

82.  A class action is superior to other available methods for fairly and efficiently adjudicating the Class Members' claims, since joinder of all Class Members is impracticable. Furthermore, because the injury suffered by the individual Class Members may be relatively small, the expense and burden of individual litigation make it impossible for Class Members to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## CAUSE OF ACTION

### COUNT I
### ADMINISTRATIVE PROCEDURE ACT
**Decisions To Withhold Medical Retirement Were Arbitrary, Capricious, and Contrary to Law (5 U.S.C. § 706)**
**Against All Defendants**

83.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84.  Defendants' retroactive and constructive placement and removal of Plaintiffs from

21

the TDRL and assignment of a less than 30 percent permanent disability rating for Plaintiffs and

Class Members' unfitting mental health conditions, resulting in the unlawful withholding of

Plaintiffs' lawfully earned medical retirements was arbitrary, capricious, and contrary to law.

Because Plaintiffs and Class Members were not provided the protections found in 38 C.F.R. §

4.129 and 10 U.S.C. §§ 1210 and 1214, Defendants were required to constructively place Plaintiffs

on the TDRL for the maximum period of five years with a 50 percent disability rating for their

unfitting mental health condition(s) and to permanently retire Plaintiffs at the end of that five years

with at least a combined rating of fifty percent.

85.    Defendants' decision was arbitrary and capricious because they failed to provide

required post-discharge medical evaluations during the statutory TDRL period and the opportunity

for a full and fair hearing prior to separation 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1210 and 1214.

86.    Absent the required TDRL evaluation and an opportunity for a full and fair hearing

prior to separation, Defendants separation of Plaintiffs was unlawful.

87.    Defendants actions deprived Plaintiffs and Class Members of their military medical

retirement benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the class they represent respectfully request that this Court

enter judgment against the Defendants and award the following relief:

a.  Certification of this Complaint as a Class action

b.  Designation of James D. Rosario, Robert J. Raditz, and Maria L. Garcia-Reyes as the
    representatives of the Class action;

c.  Designation of Plaintiffs' Counsel of Record as Class Counsel;

d.  A declaration that Service Branches' decisions to retroactively and constructively
    remove Plaintiffs and the putative Class from the TDRL after six months and assign
    less than 30 percent permanent disability ratings was arbitrary, capricious, unsupported
    by substantial evidence and violated 38 C.F.R. § 4.129 and 10 U.S.C. §§ 1202, 1210,

and 1214;

e.  Injunctive relief requiring Service Branches to correct the military records of Plaintiffs and members of the Class to reflect a military medical retirement by (a) placing Plaintiffs and Class Members on the TDRL for the required five years; (b) removing each Plaintiffs and Class Members from the TDRL at the five-year mark with a 50 percent permanent rating for their unfitting mental health condition; (c) recalculating Plaintiffs' and Class Members' Department of Defense combined disability rating under the VASRD to include the 50 percent permanent rating for Plaintiffs' and Class Members' unfitting mental health condition.

f.  Award Plaintiffs their costs and expenses incurred in this action, including reasonable attorneys' fees;

g.  Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court; and

h.  Grant any other and further relief that the Court deems just, equitable, and appropriate.

Dated: July 16, 2021

Respectfully submitted,

/s/Allen M. Gardner

Allen M. Gardner (DC Bar No. 456723)
Sarah A. Tomkowiak (DC Bar No. 987680)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Fax: (202) 637-2201
Allen.Gardner@lw.com
Sarah.Tomkowiak@lw.com

- and -

Thomas J. Giblin (*pro hac vice forthcoming*)
Justin S. Kirschner (*pro hac vice forthcoming*)
Saffa M. Khan (*pro hac vice forthcoming*)
Emilie C. Schwarz (*pro hac vice forthcoming*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Thomas.Giblin@lw.com
Justin.Kirschner@lw.com
Saffa.Khan@lw.com
Emilie.Schwarz@lw.com

Barton F. Stichman (DC Bar No. 218834)
Rochelle Bobroff (DC Bar No. 420982)
Esther Leibfarth (DC Bar No. 10164515)
David Sonenshine (DC Bar No. 496138)
**NATIONAL VETERANS LEGAL
SERVICES PROGRAM**
1600 K Street, N.W., Suite 500
Washington D.C. 20006
Telephone: (202) 621-5677
Facsimile: (202) 328-0063
bart@nvlsp.org
rochelle@nvlsp.org
esther@nvlsp.org
david@nvlsp.org

*Counsel for Plaintiffs*